UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAMES DUFF,

              Plaintiff,

v.

EARNEST C. BROOKS
CORRECTIONAL FACILITY et al.,

              Defendants.
_____/

Case No. 1:24-cv-1149

Honorable Sally J. Berens

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.4; ECF No. 6, PageID.18.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S.

344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties

to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal

law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted,

or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2),

1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see*

*Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they

are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying

these standards, the Court will dismiss Plaintiff's amended complaint[2] for failure to state a claim

against Defendants Earnest C. Brooks Correctional Facility (LRF), Calkins, Hack, and Hill. The

Court will also dismiss, for failure to state a claim, the following claims against remaining

Defendant Moore: (i) all First Amendment retaliation claims *except for* Plaintiff's First

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

[2] In Plaintiff's original complaint, he sued the Defendants in their official capacities only. (Compl., ECF No. 1, PageID.1, 2.) In an order filed on November 15, 2024, the Court noted that state official capacity defendants are absolutely immune from monetary damages. (Order, ECF No. 4, PageID.11 (citations omitted).) The Court granted Plaintiff leave to file an amended complaint "to correct the noted deficiency," explaining that "[t]he amended complaint will take the place of the original complaint, so it must include all Defendant(s) that Plaintiff intends to sue and all of the claims that Plaintiff intends to raise." (*Id.*, PageID.12 (citing *Rashada v. Flegel*, No. 23-1674, 2024 WL 1367436, at *4–5 (6th Cir. Apr. 1, 2024), which suggested that *pro se* plaintiffs should be permitted leave to amend in the interest of justice given the "highly technical nature of pleading official and personal capacity claims").) In response, Plaintiff filed an amended complaint (ECF No. 6), which is the operative complaint in this action.

Amendment retaliation claim premised on Defendant Moore removing Plaintiff's bed sheet while he was sleeping and making a sexual comment; and (ii) Eighth Amendment claims. Plaintiff's First Amendment retaliation claim against Defendant Moore premised on Moore removing Plaintiff's bed sheet while he was sleeping and making a sexual comment on September 24, 2024, will remain in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the G. Robert Cotton Correctional Facility in Jackson, Jackson County, Michigan. The events about which he complains occurred at LRF in Muskegon Heights, Muskegon County, Michigan. Plaintiff sues LRF and the following LRF officials in their individual capacities: Correctional Officers Unknown Calkins and Unknown Hack; Sergeant D. Moore; and Lieutenant Unknown Hill. (Am. Compl., ECF No. 6, PageID.15, 16.)

In Plaintiff's amended complaint, he alleges that on September 23, 2024, he "had an interaction with [Defendant] Calkins during [Calkins's] 2200 hour round."[3] (*Id.*, PageID.17.) Specifically, Plaintiff alleges that he "was using the restroom when [Defendant] Calkins [went] past [Plaintiff's] cell[,] which had both cell lights on[, and Calkins] shined the flashlight at the toilet focusing directly on [Plaintiff's] genitals and laughed." (*Id.*) During the next round, which occurred between midnight and 1:00 a.m., Plaintiff asked Defendant Hack to get a Prison Rape Elimination Act (PREA) grievance or to get Defendant Moore, a sergeant. (*Id.*) In response, Defendant Hack told Plaintiff that he would bring Plaintiff a grievance during his next round,

---

[3] In this opinion, the Court corrects the spelling and capitalization in quotations from Plaintiff's filings.

which Plaintiff states "would have been 0200 hours" on September 24, 2024. (*Id.*) Plaintiff alleges that "this never happened." (*Id.*)

At 3:00 a.m. on September 24, 2024, Defendants Moore and Hack entered Plaintiff's cell, and Plaintiff was awoken to Defendant Moore "pulling [the] sheet off of [Plaintiff's] body with [Plaintiff's] hearing aids in [Moore's] hand." (*Id.*) Plaintiff put his hearing aids in, and Defendant Moore stated: "show me your little white boy dick." (*Id.*) Plaintiff states that "this made [him] extremely uncomfortable," especially in light of "the harassment [by] [Defendant] Calkins earlier." (*Id.*) Plaintiff then noticed Defendant Hill by the door of his cell, and when Plaintiff tried to "get off of [his] top bunk to talk," Defendant Hill entered the cell and told Plaintiff to remain on his bunk. (*Id.*) Plaintiff followed this instruction and told Hill that "[he] wanted to report a PREA on [Defendant] Calkins and [Defendant] Moore for sexual harassment." (*Id.*) In response, Defendant Hill told Plaintiff that "all PREA allegations will be reported and investigated." (*Id.*) Plaintiff claims that Hill "never did," and the PREA complaint was not reported until the following day, September 25, 2024, when Plaintiff talked to non-party Qualified Mental Health Professional McHenry and McHenry "reported these allegations." (*Id.*)

On September 26, 2024, Plaintiff "went to segregation . . . [for] protection [from] the retaliation from staff," which "was causing mental distress," and Plaintiff "ended up on a hunger strike and went to the hospital." (*Id.*) Plaintiff "was then interviewed on November 3, 2024," and four days later, he "was transferred to a different facility all due to not allowing staff to sexual harass [him]." (*Id.* (grammar in original retained).)

Based on the foregoing, the Court construes Plaintiff's amended complaint to raise First Amendment retaliation claims and Eighth Amendment claims. Plaintiff seeks monetary damages and injunctive relief. (*Id.*, PageID.18.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983

6

is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendant LRF

Plaintiff names LRF as a Defendant. (Am. Compl., ECF No. 6, PageID.15.) However, as this Court noted in *Ryan v. Corizon Health Care*, No. 1:13-cv-525, 2013 WL 5786934 (W.D. Mich. Oct. 28, 2013), "individual prisons named as Defendants . . . (ICF, IBC, LRF and RGC) are buildings used by the MDOC to house prisoners. They are not the proper public entity for suit." *Id*. at *7; *see also Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) ("The McCracken County Jail is not a legal entity susceptible to suit . . .[; i]t is a department of the county . . . ."); *Caruthers v. Corr. Medical Serv., Inc.*, No. 1:10-cv-274, 2010 WL 1744881, at *1 (W.D. Mich. Apr. 27, 2010) ("The Duane Waters Hospital is not an entity capable of being sued. Rather, it is a building owned by the Michigan Department of Corrections."); *Poole v. Michigan Reformatory*, No. 09-CV-13093, 2009 WL 2960412, at *1 (E.D. Mich. Sept. 11. 2009) ("Plaintiff names the Michigan Reformatory, the Earnest C. Brooks Correctional Facility, and the Macomb Correctional Facility as defendants in this action. Those entities, however, are institutions operated by the MDOC and are not . . . legal entities subject to suit . . . .").

Moreover, Section 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). But neither the State of Michigan nor the MDOC is a "person" within the meaning of Section 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) (holding a state is not a "person"); *Parker v. Mich. Dep't of Corr.*, 65 F. App'x 922, 923 (6th Cir. 2003) (citing *Will* and holding that the MDOC is not a "person."). And, because LRF is not an entity separate from the MDOC, it is also not a "person" under Section 1983. *See, e.g., Tinney v. Detroit Reentry Center*, No. 2:19-CV-10894-TGB, 2020 WL 4334964, at *2 (E.D. Mich. July 28, 2020) (stating "[a] state prison facility is not a person . . . capable of

being sued under § 1983"); *Ward v. Healthcare Clinic*, No. 16-10646, 2016 WL 3569562, at *1 (E.D. Mich. July 1, 2016) (same); *Poole*, 2009 WL 2960412, at *1 (same).

For these reasons, Plaintiff's claims against LRF will be dismissed for failure to state a claim.

## B.    First Amendment Retaliation Claims

The Court construes Plaintiff's complaint to raise First Amendment retaliation claims against Defendants. (*See generally* Am. Compl., ECF No. 6.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.    Protected Conduct

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."). Here, Plaintiff references making oral complaints regarding alleged sexual harassment and requesting PREA grievances. (Am. Compl., ECF No. 6, PageID.17.) At this stage

of the proceedings, Plaintiff has alleged sufficient facts to suggest that he engaged in protected conduct for purposes of his First Amendment claim.

### 2.    Adverse Action and Retaliatory Motive

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

### a.    Defendant Calkins

Here, Plaintiff's First Amendment retaliation claim against Defendant Calkins fails at the third step because Plaintiff's sole interaction with Defendant Calkins, in which Calkins "shined [a] flashlight at the toilet focusing directly on [Plaintiff's] genitals and laughed" while conducting rounds on September 23, 2024, occurred prior to Plaintiff engaging in any protected conduct. (*See* Am. Compl., ECF No. 6, PageID.17.) Therefore, Plaintiff necessarily fails to show that any protected conduct motivated Defendant Calkins's actions, and Plaintiff's First Amendment retaliation claim against Defendant Calkins will be dismissed for failure to state a claim.

### b.    Defendants Hack, Moore, and Hill

##### 1.    *Failure to Provide Plaintiff with a PREA Grievance, Entry Into Cell at 3:00 a.m. on September 24, 2024, and Failure to Report and Investigate PREA Grievance*

Plaintiff alleges that after Plaintiff's interaction with Defendant Calkins on September 23, 2024, at 10:00 p.m., Defendant Hack conducted the next round in the unit, and Plaintiff asked Defendant Hack to get a PREA grievance or to get Defendant Moore, a sergeant. (*Id.*) In response, Defendant Hack told Plaintiff that he would bring Plaintiff a grievance during his next round, which would be at 2:00 a.m. on September 24, 2024; however, Plaintiff alleges that "this never happened." (*Id.*) Subsequently, at 3:00 a.m., Plaintiff alleges that Defendants Moore and Hack entered Plaintiff's cell, and Plaintiff was awoken to Defendant Moore "pulling [the] sheet off of [Plaintiff's] body with [Plaintiff's] hearing aids in [Moore's] hand." (*Id.*) After Plaintiff put his hearing aids in, Defendant Moore stated: "show me your little white boy dick." (*Id.*) Plaintiff then noticed Defendant Hill by the door of his cell, and when Plaintiff tried to "get off of [his] top bunk to talk," Defendant Hill entered the cell and told Plaintiff to remain on his bunk. (*Id.*) Plaintiff followed this instruction and told Hill that "[he] wanted to report a PREA on [Defendant] Calkins and [Defendant] Moore for sexual harassment." (*Id.*) In response, Defendant Hill told Plaintiff that "all PREA allegations will be reported and investigated." (*Id.*) Plaintiff claims that Hill "never did." (*Id.*) However, one day later, on September 25, 2024, an investigation into Plaintiff's PREA complaint started; but, Plaintiff claims that this occurred because a non-party mental health professional reported the matter, not Defendant Hill. (*See id.*)

As to Plaintiff's allegation that on September 24, 2024, at 3:00 a.m., Defendant Moore entered Plaintiff's cell while Plaintiff was sleeping, removed Plaintiff's bed sheet, and made a sexual comment regarding Plaintiff's genitals, as explained below, the Court will not dismiss this First Amendment retaliation claim against Defendant Moore on preliminary review. At this stage

of the proceedings, the Court must view the allegations in the complaint in the light most favorable to *pro se* Plaintiff, and Plaintiff's allegations, although lacking in some specificity, suggest that after he engaged in protected conduct by making an oral complaint to Defendant Hack regarding Defendant Calkin's alleged sexual harassment by asking for a PREA grievance or to see Defendant Moore, Defendants Hack and Moore entered Plaintiff's cell, and Moore then removed Plaintiff's bed sheet while he was sleeping and made a sexual comment. (*Id.*) The Court concludes that, at this stage of the proceedings, these allegations support an inference that Defendant Moore's actions were motivated by Plaintiff's protected conduct. Therefore, on initial review, the Court will not dismiss Plaintiff's First Amendment retaliation claim against Defendant Moore premised on Moore removing Plaintiff's bed sheet while he was sleeping and making a sexual comment on September 24, 2024.

With respect to Defendants Hack and Hill, although Plaintiff's allegations suggest that Defendant Hack, and potentially Defendant Hill, were present when Defendant Moore removed Plaintiff's bed sheet while he was sleeping and made a sexual comment, Plaintiff fails to allege sufficient facts to show that the presence of Defendants Hack and Hill, on its own, makes them liable for Defendant Moore's actions. (*See id.*) "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," *Iqbal*, 556 U.S. at 676, and a claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). Here, Plaintiff does not allege that Defendants Hack

11

and Hill themselves removed Plaintiff's bed sheet while he was sleeping and made a sexual comment. And Plaintiff alleges no facts to show that they had any reason to know that Defendant Moore would take that action. Under these circumstances, any First Amendment retaliation claims against Defendants Hack and Hill premised on the actions taken by Defendant Moore will be dismissed for failure to state a claim because Plaintiff fails to show that Hack and Hill engaged in any active unconstitutional behavior.

Likewise, under the circumstances alleged by Plaintiff, he fails to show that Defendants Hack and Hill retaliated against Plaintiff when Defendant Hack told Plaintiff that he would bring Plaintiff a grievance during his next round but allegedly did not do so, and when Defendant Hill told Plaintiff that "all PREA allegations will be reported and investigated," but Plaintiff claims that Hill "never did." (Am. Compl., ECF No. 6, PageID.17.)

Even assuming, without deciding, that Defendants Hack's and Hill's inaction constitutes adverse action, at most, Plaintiff's allegations suggest only temporal proximity between Defendants Hack's and Hill's inaction and Plaintiff's protected conduct (*see id.*); however, although, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" the United States Court of Appeals for the Sixth Circuit, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, No. 19-1837 (6th Cir. Mar. 10, 2020) (unpublished) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the

grievance), *with Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive).

Instead, Plaintiff's allegations of retaliation against Defendants Hack and Hill are entirely conclusory, and Plaintiff merely alleges the ultimate fact of retaliation without providing any supporting facts. Such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under Section 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive Section 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Therefore, any First Amendment retaliation claims against Defendants Hack and Hill premised on their alleged inaction will be dismissed for failure to state a claim.

### 2.    *Placement in Segregation*

Plaintiff alleges that on September 25, 2024, he told non-party Qualified Mental Health Professional McHenry about the September 23–24, 2024 events, and McHenry "reported these allegations." (Am. Compl., ECF No. 6, PageID.17.) The next day, September 26, 2024, Plaintiff "went to segregation . . . [for] protection [from] the retaliation from staff . . . ." (*Id.*)

The Sixth Circuit has held that transfer from general population to administrative segregation can be sufficient to constitute adverse action. *Hill*, 630 F.3d at 474–75. As such, at this stage of the proceedings, the Court assumes that Plaintiff's placement in segregation constituted an adverse action. However, Plaintiff's allegations regarding the third element of a First Amendment retaliation claim—retaliatory motive—fall short because Plaintiff does not allege any

facts to suggest that Defendants had any involvement in, or knowledge of, his placement in segregation. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Accordingly, Plaintiff's First Amendment retaliation claim premised on his placement in segregation on September 26, 2024, will be dismissed for failure to state a claim.

### 3.    *Transfer to Different Correctional Facility*

Plaintiff alleges that four days after he was interviewed on November 3, 2024, regarding the September 23–24, 2024 events, he "was transferred to a different facility all due to not allowing staff to sexual harass [him]." (Am. Compl., ECF No. 6, PageID.17 (grammar in original retained).)

Typically, transfers to the general population of another prison are not an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases). However, the Sixth Circuit has held that transfer from general population to administrative segregation or another prison's lock-down unit can be sufficient to constitute adverse action. *Hill*, 630 F.3d at 474–75.

In this action, Plaintiff alleges that he was transferred to a new correctional facility; however, he alleges no facts to suggest that he was transferred to an administrative segregation unit in the new facility or that his transfer resulted in any difference to his confinement. (*See* Am. Compl., ECF No. 6, PageID.17.) Under the circumstances alleged by Plaintiff, the Court concludes that Plaintiff's transfer to a different correctional facility did not constitute adverse action.

And regardless, Plaintiff does not allege any facts to suggest that Defendants had any involvement in, or knowledge of, his transfer to a different correctional facility. (*See id.*) Therefore, even if the transfer constituted adverse action, Plaintiff would fail to state a claim a First

14

Amendment retaliation claim against Defendants regarding this transfer because he fails to allege any facts showing that they were involved in the transfer. *See Gilmore*, 92 F. App'x at 190; *Frazier*, 41 F. App'x at 764; *see also See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).

Therefore, any First Amendment retaliation claim premised on Plaintiff's transfer to different correctional facility will be dismissed.

### C.    Eighth Amendment Claims

### 1.    Sexual Remarks

The Court also construes Plaintiff's amended complaint to raise Eighth Amendment claims regarding Defendants' alleged "sexual harassment." (Am. Compl., ECF No. 6, PageID.17.)

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). However, in the context of claims against prison officials, the Sixth Circuit has repeatedly held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not necessarily rise to constitutional dimensions. *See, e.g.*, *Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (concluding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (finding that verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim).

Further, some courts, including the Sixth Circuit, have held that minor, isolated incidents of sexual touching coupled with offensive sexual remarks also do not rise to the level of an Eighth

Amendment violation. *See, e.g.*, *Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (finding that two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) *abrogated on other grounds by Maben*, 887 F.3d at 266–67 (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (holding that male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (finding that, where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault).

In contrast, repeated and extreme incidents may sufficiently state a claim. For example, the Sixth Circuit found an Eighth Amendment violation when a male prison official sexually harassed a female prisoner by demanding on multiple occasions that the prisoner expose herself and masturbate while the official watched and intimidated her into complying. *Rafferty*, 915 F.3d at 1095–96. The *Rafferty* court noted that, in light of the coercive dynamic of the relationship between prison staff and prisoners, such demands amount to sexual abuse. *Id.* at 1096.

*Rafferty*, however, is distinguishable from Plaintiff's claim. Here, Plaintiff alleges that on one occasion, while Defendant Calkins was conducting rounds in Plaintiff's unit, Plaintiff "was using the restroom when [Defendant] Calkins [went] past [Plaintiff's] cell[,] which had both lights on[, and Calkins] shined the flashlight at the toilet focusing directly on [Plaintiff's] genitals and laughed." (Am. Compl., ECF No. 1, PageID.17.) Plaintiff also alleges that on a separate occasion,

16

Defendant Moore made a sexual comment when he woke Plaintiff up and removed Plaintiff's bed sheet. (*Id.*) Plaintiff's allegations are not a model of clarity, but his allegations suggest that Defendant Hack, and potentially Defendant Hill, were present when Defendant Moore took this action. (*See id.*) The Court does not minimize Plaintiff's experience; however, nothing in the complaint suggests that Defendants physically touched Plaintiff, and unlike in *Rafferty*, Plaintiff's allegations do not suggest that each Defendant made a sexual remark on more than one occasion. (*See id.*) As to Defendants Hack and Hill, Plaintiff does not allege that Defendants Hack and Hill themselves engaged in any "sexual harassment," and Plaintiff fails to allege any facts to suggest that they could have prevented Defendant Moore's actions.

Under these circumstances, Defendant Calkins's actions of shining a flashlight into Plaintiff's cell and laughing and Defendant Moore's actions and verbal remark, while offensive and unprofessional, do not evidence the sort of coercive sexual demand at issue in *Rafferty*. *See Rafferty*, 915 F.3d at 1095–96.

Accordingly, for these reasons, Plaintiff's Eighth Amendment claim against Defendants regarding sexual remarks will be dismissed for failure to state a claim.

## 2.    Hunger Strike

The Court construes Plaintiff's amended complaint to raise another Eighth Amendment claim regarding Plaintiff's engagement in a hunger strike. (Am. Compl., ECF No. 6, PageID.17.)

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective

components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, without providing any further explanation or facts, Plaintiff alleges that on September 26, 2024, Plaintiff "went to segregation," and Plaintiff "ended up on a hunger strike and went to the hospital." (Am. Compl., ECF No. 6, PageID.17.) Even assuming, without deciding, that Plaintiff's reference to going on a hunger strike satisfied the objective component of the relevant two-prong test, Plaintiff fails to allege any facts to show that Defendants had any involvement in, or knowledge of, Plaintiff's hunger strike. Plaintiff therefore fails to satisfy the subjective component because he fails to show that Defendants knew of a substantial risk of harm to him related to the hunger strike, let alone that they knew of this risk and disregarded it.

Accordingly, Plaintiff's Eighth Amendment claim regarding his hunger strike will be dismissed for failure to state a claim.

## **Conclusion**

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendants LRF, Calkins, Hack, and Hill will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Moore: (i) all First Amendment retaliation claims *except for* Plaintiff's First Amendment retaliation claim premised on Defendant Moore removing Plaintiff's bed sheet while he was sleeping and making a sexual comment; and (ii) Eighth Amendment

18

claims. Plaintiff's First Amendment retaliation claim against Defendant Moore premised on Moore removing Plaintiff's bed sheet while he was sleeping and making a sexual comment on September 24, 2024, remains in the case.

An order consistent with this opinion will be entered.


Dated:    January 27, 2025                           /s/ Sally J. Berens
                                                     SALLY J. BERENS
                                                     United States Magistrate Judge