UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES DUFF #870201,

        Plaintiff,                                      Hon. Paul L. Maloney

v.                                                              Case No. 1:24-cv-1149

EARNEST C. BROOKS
CORRECTIONAL FACILITY, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before me on Defendant Moore's Motion for Summary Judgment. (ECF No. 21.) Plaintiff has failed to respond to the motion within the time permitted by Western District of Michigan Local Civil Rule 7.2(c).[1] Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **GRANTED** and the complaint be **DISMISSED WITH PREJUDICE**.

### I.  Background

Plaintiff, who is currently on parole status with the Michigan Department of Corrections (MDOC), filed this action on October 31, 2024, pursuant to 42 U.S.C. § 1983, against several MDOC employees based on events that occurred at Earnest C. Brooks Correctional Facility (LRF) while Plaintiff was incarcerated there in September 2024. Plaintiff's sole remaining claim is his First Amendment retaliation claim against Defendant Sgt. Moore. Specifically, Plaintiff claims

---

[1] Although Plaintiff is proceeding pro se, he is still expected to comply with the applicable court rules. *See Strohmeyer v. Chase Bank USA, N.A.*, No. 3:17-cv-443, 2018 WL 2669991, at *2 (E.D. Tenn. June 4, 2018) ("It is correct that pro se parties are expected to comply with the rules of procedure just as parties represented by counsel must do."); *Jones v. Graley,* No. 2:05-cv-773, 2006 WL 1697637, at *1 (S.D. Ohio June 20, 2006) (although federal courts have treated pro se litigants more leniently, they "are still expected to comply with the procedural rules of the court").

that Sgt. Moore retaliated against him by removing his bed sheet while he was sleeping and making a sexual comment. (ECF No. 7 at PageID.37–38.)

During the late evening of September 23, 2024, as he was making rounds at LRF, Corrections Officer (CO) Calkins noticed a "fishing" line coming out from under Plaintiff's cell door. "Fishing" is when prisoners create a line using sheets, clothing, or other materials by unraveling the threads and tying them together. The line is then cast out of a cell as a means to pass items to prisoners in other cells, such as letters, food, drugs, and other contraband items. (ECF No. 22-2 at PageID.99.) "Fishing" is prohibited as it creates safety and security concerns. (*Id.* at PageID.100.) After noticing the "fishing" line—a modified bed sheet—coming from under Plaintiff's cell door, CO Calkins removed it. (*Id.*)

CO Calkins and CO Hack were sharing duties that night and conducting security rounds every half hour. (*Id.* at PageID.99; ECF No. 22-3 at PageID.105.) As a standard practice while doing rounds, Calkins and Hack shined a flashlight inside of the dark cells to confirm that the prisoners were in their cells, alive, and not engaged in illegal conduct. (ECF No. 22-2 at PageID.99; ECF No. 22-3 at PageID.105–06.) During his rounds that night, CO Calkins did not shine his flashlight directly at Plaintiff's genitals while he was using the toilet and then laugh or say anything, as Plaintiff has alleged. (ECF No. 22-2 at PageID.99.)

In response to the removal of the "fishing" line, Plaintiff apparently became upset, so he and his cellmate began antagonizing the officers during the morning hours of September 24 by covering their cell windows. On one of his rounds after 2:00 a.m., CO Calkins noticed that the window on Plaintiff's cell was entirely covered. He knocked on the door and ordered Plaintiff and his cellmate to remove the sheet, but they did not comply. (*Id.* at PageID.100.) Calkins spoke with Sgt. Moore about the situation and they both went to the cell, where Sgt. Moore opened the door

2

and removed the sheet from the window. (*Id.*) CO Calkins confirmed that Plaintiff and his cellmate were present in the cell and shut the door. (*Id.*)

Around 3:00 a.m., while doing rounds, CO Hack noticed that Plaintiff and his cellmate had hung a sheet further inside the cell directly covering the window. Hack then went outside to view the cell from the exterior window and found a bedsheet covering that window as well. (ECF No. 22-3 at PageID.106.) The officers reported the issue to Sgt. Moore, who contacted Lt. Hill. (ECF No. 22-2 at PageID.101; ECF No. 22-3 at PageID.107.) At Lt. Hill's direction, Sgt. Moore and CO Hack entered the cell and removed the excess sheets and other items Plaintiff and his cellmate were using to obstruct the view into their cell. (*Id.* at PageID.107; ECF No. 22-4 at PageID.112.) CO Hack and Sgt. Moore removed only the excess state-issued linens that were in the cell but did not pull any covers or sheets off of Plaintiff or his cellmate. (ECF No. 22-3 at PageID.107; ECF No. 22-4 at PageID.112.) In addition, Sgt. Moore did not make any comment about Plaintiff's "little white boy dick." (ECF No. 22-3 at PageID.107; ECF No. 22-4 at PageID.112.)

While CO Hack was in Plaintiff's cell on September 24, Plaintiff never asked Hack for a Prisoner Rape Elimination Act (PREA) form, indicated that he wanted to file a PREA complaint against CO Calkins, or asked to speak with Sgt. Moore. (ECF No. 22-3 at PageID.105.) In addition, CO Hack never spoke with Sgt. Moore about Plaintiff having expressed PREA issues to CO Hack. (*Id.*)

On September 25, 2024, Plaintiff told Qualified Mental Health Provider (QMHP) McHenry that he was being sexually harassed by CO Calkins. (ECF No. 225 at PageID.117.) Specifically, he told QMHP McHenry that when CO Calkins conducted rounds, he would shine the flashlight into his cell directly at the toilet. (ECF No. 22-5 at PageID.117.) Plaintiff said that when CO Hack and Sgt. Moore entered his cell on September 24 to remove paper covering his cell window, they

were laughing and making jokes about seeing Plaintiff's penis, which Plaintiff believed referred to CO Calkins's earlier comments while doing rounds. (*Id.*) Lieutenant Andrew Streit investigated the matter and found insufficient evidence to support Plaintiff's allegations. (*Id.* at PageID.124.)

## II.   Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Generally, where the non-moving party fails to respond to a motion for summary judgment, "the district court must, at a minimum, examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden." *Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005) (citing *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998)).

## III.   Discussion

As noted, Plaintiff's only remaining claim is his retaliation claim against Sgt. Moore. Plaintiff alleged in his amended complaint that, while CO Calkins was doing his rounds on the night/morning of September 23–24, 2024, Plaintiff was using the toilet, and Calkins shined his flashlight into Plaintiff's cell directly at the toilet and saw Plaintiff's genitals and laughed. Plaintiff further alleged that during the next round, he asked CO Hack for a PREA grievance form or to get

Sgt. Moore, and Hack responded that he would bring Plaintiff a PREA grievance form during his next round but never brought him the form. As to Sgt. Moore, Plaintiff alleged that when Sgt. Moore and CO Hack entered his cell around 3:00 a.m., Sgt. Moore pulled the sheet off Plaintiff's body and stated: "show me your little white boy dick." (ECF No. 7 at PageID.24–25 (summarizing Plaintiff's amended complaint allegations).)

To establish a prima facie case of retaliation, Plaintiff must prove the following elements: (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To satisfy the causal connection requirement, a plaintiff must show that the defendant's retaliatory motive was "a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019). Once the plaintiff has met this burden, if the defendant can show that he would have taken the same action in the absence of protected activity, the defendant is entitled to prevail on summary judgment. *Thaddeus–X*, 175 F.3d at 399; *see Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001).

Here, Defendants have shown that Plaintiff's retaliation claim fails for lack of any factual support. First, CO Calkins denies Plaintiff's allegation that he shined his flashlight into Plaintiff's cell while Plaintiff was using the toilet and laughed or said anything. (ECF No. 22-2 at PageID.99.) Second, CO Hack denies Plaintiff's allegations that he asked Hack for a PREA grievance form or to speak to Sgt. Moore, and he states that Plaintiff did raise any PREA issues when he was at Plaintiff's cell during the morning of September 24, 2024. (ECF No. 22-3 at PageID.105.) In addition, CO Hack confirms that he never spoke with Sgt. Moore about Plaintiff reporting PREA-

5

related issues, and Sgt. Moore states that he was unaware that Plaintiff had requested a PREA grievance form. (*Id.*; ECF No. 22-4 at PageID.112.) Finally, CO Hack and Sgt. Moore confirm that they did not remove sheets or bedding covering Plaintiff or his cellmate and that Sgt. Moore did not make any statement concerning Plaintiff's "dick" when they went to Plaintiff's cell during that morning to remove the excess state-issued linens to prevent Plaintiff from blocking the view into his cell. (ECF No. 22-3 at PageID.107; ECF No. 22-4 at PageID.112.)

Sgt. Moore's evidence shows that Plaintiff did not engage in protected conduct, that Sgt. Moore did not take an adverse action toward Plaintiff, and that Sgt. Moore was unaware that Plaintiff had engaged in protected conduct. Because Plaintiff has failed to respond with any evidence creating a genuine issue of material fact, Sgt. Moore is entitled to summary judgment.

## IV.  Conclusion

For the reasons set forth above, I recommend that the Court **grant** Sgt. Moore's motion for summary judgment (ECF No. 21) and **dismiss** the complaint **with prejudice**.

Dated: January 21, 2026                       /s/ Sally J. Berens
                                              SALLY J. BERENS
                                              U.S. Magistrate Judge

## NOTICE TO PARTIES

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).